**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez**

Criminal Case No. 96-cr-203-WJM

UNITED STATES OF AMERICA,

    Plaintiff,

v.

**3.**    **JAMES W. EADS,**

    Defendant.

---

## ORDER GRANTING MOTION FOR RECONSIDERATION

---

Before the Court is Defendant James W. Eads's Motion Seeking Reconsideration of the Court's Order Denying Compassionate Release ("Motion"). (ECF No. 810.) For the following reasons, the Court grants the Motion.

## I. BACKGROUND

Eads has been incarcerated since May 1996, two years before a jury convicted him of the following offenses:

- conspiracy to distribute and possess with intent to distribute methamphetamine and cocaine, in violation of 21 U.S.C. §§ 846 and 841(b)(1)(A) ("Count 1");

- possession with intent to distribute methamphetamine, in violation of 21 U.S.C. § 841(b)(1)(A) ("Count 2"); and

- using or carrying a firearm during and in relation to the crime charged in Count 2, in violation of 18 U.S.C. § 924(c) ("Count 3").

(ECF No. 4.)

The late United States District Judge Daniel P. Sparr sentenced Eads to life imprisonment on Count 1, 235 months' imprisonment on Count 2, to run concurrently to the life sentence, and 30 years' imprisonment on Count 3, to run consecutive to any other sentence. (ECF No. 539.) The Government moved for a sentencing enhancement pursuant to 18 U.S.C. § 851 based on Eads's two prior convictions for sale of and conspiracy to distribute cocaine, which resulted in the mandatory life sentence. (ECF No. 308.) Eads is currently incarcerated at FCI Florence, a facility of the Federal Bureau of Prisons. He has served approximately 28 years of his sentence.

In October 2020, Eads filed a motion for compassionate release, seeking immediate release based on, among other issues, the outbreak of COVID-19 at his facility. (ECF No. 777.) In support, he argued that extraordinary and compelling circumstances justified his release, particularly, (1) his minor, non-violent role in the underlying offenses; (2) his "exemplary conduct while in prison"; (3) his "impressively short disciplinary record"; (4) an amendment to section 841(b)(1)(A); (5) his lack of risk to the community; (6) the section 3553(a) factors; (7) his various medical issues; (8) the unconstitutionality of his life sentence under the *Alleyne* and *Apprendi* decisions; (9) the grossly length of his sentences; and (10) his plan to live with his sister and her husband upon release. (*Id.* at 2–4.)

In May 2021, the Court denied Eads's motion. (ECF No. 792.) Considering Eads's age at the time (62) and his medical conditions, including atrial fibrillation, bone spurs, a recent hip replacement surgery, and diverticulitis, the Court acknowledged that these circumstances "may be risk factors for severe COVID-19." (*Id.* at 4.) But the

2

Court concluded that they did not constitute extraordinary and compelling circumstances where "the BOP website reflects that zero cases of inmates with virus currently exist at FCI Florence."  (*Id.*)  Nevertheless, assuming without deciding that Eads's health conditions constituted extraordinary and compelling circumstances, the Court went on to consider the 18 U.S.C. § 3553(a) factors.  (*Id.*)

In doing so, the Court observed Eads's argument that he would have been sentenced to about 55-years imprisonment—not a mandatory life sentence—had he been sentenced after section 841(b)(1)(A) was amended.  (*Id.* at 5.)  Even so, the Court explained, Eads had "served less than half of the 55-year sentence he would receive if sentenced today."  (*Id.*)  Moreover, the Court reasoned, "it cannot reasonably be disputed that [his] conduct was serious" in that "he was part of a group that exchanged firearms, ammunition, and explosive devices for methamphetamine."  (*Id.*)  And the Court had recently denied a compassionate release motion filed by Eads's co-defendant, Robert Bernhardt, "who had received an even greater sentence."  (*Id.* at 6.)  In the Court's view, such a sentencing disparity, along with the other circumstances, would not be consistent with the section 3553(a) factors.  (*Id.*)

The Court advised, however, that "[i]n another three years . . . Eads will have served 27 years in custody, or approximately half of the sentence he would have received if sentenced today for the same conduct (assuming a 25-year rather than life enhancement on Count 1)."  The Court continued, "If COVID-19 remains as threatening in three years as it is today, or a comparable health threat exists at that time, a motion for compassionate release brought at that time would enjoy greater equities in its favor under § 3553(a)."  (*Id.*)  Accordingly, the Court denied Eads's compassionate release

3

motion without prejudice.

In December 2023, Eads filed the instant Motion asking the Court to reconsider its earlier Order denying his compassionate release motion. (ECF No. 810.) Therein, he largely repeats the arguments he made in his original motion pertaining to his lessor role in the offenses and culpability but focuses primarily on an amendment to U.S.S.G. § 1B1.13(b)(6), which he asserts provides that an unusually long sentence can constitute an extraordinary and compelling circumstance. (*Id.* at 4, 6.) He also reiterates his earlier argument that his original life sentence on Count 1 was unconstitutional because the sentence enhancement was based on facts neither charged nor found by a jury, which he says is a violation of *Alleyne* and *Apprendi*. (*Id.* at 4–5.)

The Government filed an opposition brief (ECF No. 815), to which Eads filed a reply (ECF No. 819). He also filed a supplemental letter. (ECF No. 823.)

## II. LEGAL STANDARD

District courts have broad discretion to reconsider interlocutory rulings before the entry of judgment. *Rimbert v. Eli Lilly & Co.*, 647 F.3d 1247, 1251 (10th Cir. 2011). Grounds for such reconsideration include: "(1) an intervening change in the controlling law, (2) new evidence previously unavailable, and (3) the need to correct clear error or prevent manifest injustice." *Servants of Paraclete v. Does*, 204 F.3d 1005, 1012 (10th Cir. 2000).

"Notwithstanding the district court's broad discretion to alter its interlocutory orders, the motion to reconsider 'is not at the disposal of parties who want to rehash old arguments.'" *Nat'l Bus. Brokers, Ltd. v. Jim Williamson Prods., Inc.*, 115 F. Supp. 2d

4

1250, 1256 (D. Colo. 2000) (quoting *Young v. Murphy*, 161 F.R.D. 61, 62 (N.D. Ill. 1995)). "Rather, as a practical matter, to succeed in a motion to reconsider, a party must set forth facts or law of a strongly convincing nature to induce the court to reverse its prior decision." *Id*. Even under this lower standard, "[a] motion to reconsider should be denied unless it clearly demonstrates manifest error of law or fact or presents newly discovered evidence." *Id*.

Generally, a court "may not modify a term of imprisonment once it has been imposed." *Dillon v. United States*, 560 U.S. 817, 819–24 (2010). Compassionate release is a statutorily authorized exception to this rule—the statute allows a court to reduce a sentence when "extraordinary and compelling reasons" exist. § 3582(c).

As relevant here, the Sentencing Commission's policy statement explains that an imprisonment term may be reduced if (1) extraordinary and compelling reasons warrant the reduction; (2) the defendant is not a danger to the safety of any other person or the community; and (3) the reduction is consistent with this policy statement. *See United States v. Wilson,* 2021 WL 4859690, at *2 (10th Cir. Oct. 19, 2021) (unpublished); *see also* U.S.S.G. § 1B1.13. The extraordinary and compelling standard imposes "an exceptionally high standard for relief." *United States v. McCoy*, 981 F.3d 271, 288 (4th Cir. 2020); *see also United States v. Bright*, 2020 WL 473323, at *1 (D. Kan. Jan. 29, 2020) (noting that the "extraordinary and compelling" standard imposes a "heavy burden on a defendant seeking relief").

The Tenth Circuit has explained that section 3582(c)(1)(A)(i) creates a "three-step test" for evaluating compassionate release. *United States v. McGee*, 992 F.3d 1035, 1043 (10th Cir. 2021); *see also United States v. Maumau*, 993 F.3d 821, 831

5

(10th Cir. 2021).  A district court may grant a motion for compassionate release if: (1) extraordinary and compelling reasons warrant a sentence reduction; (2) the sentence reduction is consistent with applicable policy statements issued by the Sentencing Commission; and (3) the court considers the section 3553(a) factors, to the extent they are applicable.  *United States v. Wayt*, 2024 WL 3594223, at *2 (10th Cir. 2024).

### III. ANALYSIS

Eads contends that his medical conditions, exemplary disciplinary record, rehabilitation, and the gross disparity between the mandatory life sentence he originally received and the 55-year sentence he would likely receive today under the since-amended section 841(b)(1)(A) collectively constitute extraordinary and compelling reasons to reduce his sentence.  (ECF No. 810 at 2.)  He further contends that the section 3553(a) factors weigh in his favor.  (*Id.* at 14.)  Eads is correct.

The Sentencing Commission's policy statement on compassionate release requires "extraordinary and compelling reasons" to warrant a sentence reduction and that the defendant not pose a danger to the public.  U.S.S.G. § 1B1.13(a)–(b).  As amended in November 2023, the policy statement expands the list of extraordinary and compelling reasons justifying compassionate release from federal detention.  U.S.S.G. § 1B.13, amend. 814.  Specifically, the policy statement identifies six categories of "extraordinary and compelling reasons" justifying compassionate release.  The first four categories pertain to a defendant's (1) medical circumstances; (2) advanced age and deteriorating health in combination with the amount of time served; (3) compelling family circumstances; and (4) victimization by correctional staff while in custody.  U.S.S.G. § 1B1.13(b)(1)–(4), amend. 814.  A fifth catch-all category exists for a "circumstance or

combination of circumstances that, when considered by themselves or together with any of the reasons described in paragraphs (1) through (4), are similar in gravity to those described in paragraphs (1) through (4)." U.S.S.G. § 1B1.13(b)(5).  The sixth category arises if the defendant received an unusually long sentence, has served at least 10 years, and a change in law produces a gross disparity between the sentence being served and the sentences likely to be imposed at the time the motion was filed, after considering the individual circumstances of the defendant.  U.S.S.G. § 1B1.13(b)(6).[1]

Eads has shown that he was sentenced to an unusually long sentence,[2] which in combination with his rehabilitative efforts and health challenges, in the Court's view constitutes extraordinary and compelling reasons to reduce his sentence.  *McGee*, 992 F.3d at 1048 (noting that a sentencing disparity "cannot, standing alone, serve as the basis for a sentence reduction under § 3582(c)(1)(A)(i)").  The Government agrees that the amendment to section 841(b)(1)(A) means that Eads would have been sentenced to approximately 55 years on count 1—and not to a life sentence.  (*See* ECF No. 815 at 3 ("If Eads were sentenced today, he likely would have received a sentence of at least 55 years for a third conviction under 21 U.S.C. § 841(b) and the 30-year sentence he received for his firearms offenses.").)  The Government likewise agrees that he has

---

[1] Section 1B1.13(c) contains a limitation on a district court's consideration of changes in law. *See* § 1B1.13(b)(6)(c) ("Except as provided in subsection (b)(6), a change in the law (including an amendment to the Guidelines Manual that has not been made retroactive) shall not be considered for purposes of determining whether an extraordinary and compelling reason exists under this policy statement.  However, if a defendant otherwise establishes that extraordinary and compelling reasons warrant a sentence reduction under this policy statement, a change in the law (including an amendment to the Guidelines Manual that has not been made retroactive) may be considered for purposes of determining the extent of any such reduction.").

[2] The Court notes that Eads does not specifically argue that he has served an unusually long sentence in light of the intervening amendment to section 924(c)(1)(A), under which he received a 30-year consecutive sentence.  (ECF No. 539.)  This deficiency in Eads's filings is not controlling for purposes of the Court's analysis of the central issues presented by his Motion.

served more than 10 years of that sentence. (*See Id.* at 2 (acknowledging that Eads, "as of January 19, 2024, has served approximately 27 years and 5 ½ months of a life sentence").)

In the Court's view, there is a gross disparity between a life sentence and a 55-year sentence in this case. *See United States v. Allen*, 2024 WL 631609, at *5 (N. D. Ga. Feb. 12, 2024) (collecting cases and finding that life is unusually long); *United States v. Ware*, 2024 WL 1007427, at *8 (N. D. Ga. Mar. 6, 2024); *United States v. Harper*, 2024 WL 1053547, at *5 (N. D. Ga. Mar. 11, 2024) ("87 years is, for the majority of people, a literal and figurative lifetime"); *United States v. Colley*, 2024 WL 1516128, at *5 (N. D. Ga. Mar. 26, 2024) (agreeing with *Allen* and *Ware* that a 55-year sentence is unusually long); *United States v. Bizzell*, 2024 WL 1832995, at *4 (M. D. Fla. Apr. 26, 2024) (finding a 65-year sentence by any definition to be unusually long); *United States v. Revels*, 2024 WL 639542, at *3 (D. Kan. Feb. 15, 2024) (finding a gross disparity between 235 months and a 92–115 month guideline range).

Hence, the Court is convinced that Eads has satisfied his burden to establish that extraordinary and compelling circumstances support his release. *See United States v. Crespin*, 2024 WL 3084972, at *5 (10th Cir. 2024) (noting that "the weight of authority indicates that the defendant carries the burden on a motion for compassionate release to show he is entitled to relief").

Arguing otherwise, the Government insists that a non-retroactive change in law "is neither extraordinary nor compelling" because "a defendant's lawfully imposed sentence simply reflects the law at the time he was sentenced." (ECF No. 815 at 3.) As for the disparity "between Mr. Eads's sentence and the sentence he would receive

8

today," the Government says that this "is the product of deliberate congressional design—namely, Congress's decision not to make the First Step Act's change to Section 841(b) applicable to defendants who had already been sentenced." (*Id.* at 5.)

But the Government barely acknowledges the November 2023 amendment to section 1B1.13, which runs headlong against its argument. (*See* ECF No. 815 at 2 (citing section 1B1.13(b)(5)–(6) and (c) once at the beginning of its motion).) Section 1B1.13(b)(6) provides that an unusually long sentence produced by a change in law (other than a non-retroactive amendment to the Guidelines Manual) may constitute extraordinary and compelling circumstances under the compassionate release statute. As best the Court can tell, the Government believes the Court should disregard the addition of subsection (b)(6) to the Guidelines because it is inconsistent with the definitions of "extraordinary" and "compelling" under section 3582(c)(1)(A) and the principle that a final sentence should not be disturbed by a non-retroactive change in the law. (ECF No. 815 at 5 ("To treat a nonretroactive change in the law as a 'compelling' reason to disturb a final sentence would thus undo the balance already struck by ordinary nonretroactivity principles.").)[3]

To be sure, some Circuits have adopted the Government's view on this point. The Seventh Circuit, for example, has "squarely and definitely" held that a non-retroactive statutory amendment cannot "constitute an extraordinary and compelling reason for a sentencing reduction." *United States v. Thacker*, 4 F.4th 569, 575 (7th Cir. 2021) (holding that a non-retroactive change to statutory mandatory minimum sentence is not an extraordinary and compelling reason for relief under § 3582(c)(1)(A)(i) and that

---

[3] Similarly, the Government submits that the amendments to the Sentencing Guidelines, on which Eads relies, "do not apply to his case[.]" (ECF No. 815 at 7.)

a district court cannot consider such a change, whether alone or in combination with any other factor, when determining whether a defendant has established extraordinary and compelling reasons potentially warranting a sentence reduction). This stance is shared by other Circuits as well. *See United States v. Andrews*, 12 F.4th 255, 260–62 (3d Cir. 2021) (holding that non-retroactive changes in law are not permissible considerations); *United States v. McMaryion*, 64 F.4th 257, 259–60 (5th Cir. 2023) (same); *United States v. McCall*, 56 F.4th 1048, 1061 (6th Cir. 2022) (en banc) (same); *United States v. Crandall*, 25 F.4th 582, 585–86 (8th Cir. 2022) (same); *United States v. Jenkins*, 50 F.4th 1185, 1198, 1198 (D.C. Cir. 2022) (same).

Importantly, however, that is not the view of all Circuits, including the Tenth Circuit, in which this Court sits. *McGee*, 992 F.3d at 1047–48 (holding that non-retroactive changes in sentencing law may be considered in light of a defendant's particular circumstances); *Maumau*, 993 F.3d at 831 (upholding the district court's extraordinary and compelling circumstances finding where there was a change in law that led a sentencing disparity, along with other reasons); *United States v. Molina*, 2024 WL 1154393, at *3 (10th Cir. 2024) (upholding the district court's denial of compassionate release while citing section 1B1.13(b)(6) and noting that the defendant "has identified no change in law to support his motion")[4]; *United States v. Chen*, 48 F.4th 1092, 1098 (9th Cir. 2022) (same); *United States v. Ruvalcaba*, 26 F.4th 14, 26–28 (1st Cir. 2022) (same).

Consistent with *McGee* and *Maumau*, the Court is satisfied, along with other district courts in this jurisdiction, that it must consider and defer to the guidance offered

---

[4] The Court notes that this unpublished Tenth Circuit decision was announced in March 2024—*after* the Guidelines were amended to include subsection (b)(6).

10

by Sentencing Commission's policy statement.  *Loper Bright Enterprises v. Raimondo*, 144 S. Ct. 2244, 2273 (2024) ("[W]hen a particular statute delegates authority to an agency consistent with constitutional limits, courts must respect the delegation, while ensuring that the agency acts within it."); *see also United States v. Carrera Ramirez*, 2024 WL 54429, at *4 (D. Utah Jan. 4, 2024) (applying *Maumau* and reducing a sentence where the defendant would have served roughly half the time she had already served in the wake of a change in law); *United States v. Moreira*, 2024 WL 378032, at *4 (D. Kan. Jan. 31, 2024) (granting compassionate release where the "defendant received an unusually long sentence"); *United States v. Brooks*, 2024 WL 689766, at *5–7 (N. D. Okla. Feb. 2024) ("Bound by Tenth Circuit precedent and persuaded by the Sentencing Commission's official commentary to Amendment 814, the Court rejects the Government's argument that USSG § 1B1.13(b)(6) is invalid.").

For all these reasons, the Court concludes that Eads's unusually long sentence, along with the circumstances described below, constitute extraordinary and compelling circumstances, which in the aggregate are sufficient for it to conclude that a sentence reduction in this case, and at this time, is consistent with the policy statements contained in section 1B1.13(b)(6).

Before reducing Eads's sentence, however, the Court must still consider whether a sentence reduction is consistent with the Court's consideration of the section 3553(a) factors.  As relevant here, the factors direct the Court to consider:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence imposed—

> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>
> (B) to afford adequate deterrence to criminal conduct;
>
> (C) to protect the public from further crimes of the defendant; and
>
> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
>
> [and]
>
> * * *
>
> (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct.

Like before, the Court acknowledges the seriousness of the offenses for which Eads was convicted. As explained in its earlier Order, "it cannot reasonably be disputed that Eads's conduct was serious" in that "he was part of a group that exchanged firearms, ammunition, and explosive devices for methamphetamine." (ECF No. 792 at 5.) A sentence of 28 years, however, is not only very significant, in these circumstances it is sufficient to reflect the seriousness of the offense, promote respect for the law, and provide just punishment. It is also, in the Court's view, more than sufficient to afford adequate specific and general deterrence, and to protect the public from further crimes of this defendant. Moreover, Eads's rehabilitation is encouraging: he has earned numerous certificates through continuing education courses offered at his facility. (ECF No. 788 at 12; see also ECF No. 77 at 26–34.) And the Court is mindful, as it was three years ago, that Eads is now in his late 60s and suffers from various medical ailments, including atrial fibrillation, bone spurs, diverticulitis, not to mention a hip replacement

12

surgery.  (ECF No. 792 at 4.)

Lastly, the Court is cognizant that it denied Eads's original compassionate release motion in light of the fact that it had recently denied a motion for early release filed by his co-defendant, Robert Bernhardt.  (ECF No. 792 at 5.)  The Court observed, "[g]iven that Eads received an even greater sentence, the Court finds that the disparity that would result from sentencing Eads to so little time compared to his co-defendant is inconsistent with the directive of the sentencing statute that unwarranted sentencing disparities between similarly situated defendants be avoided."  (*Id.* at 6.)

Significantly, however, the Court granted Bernhardt's *unopposed* motion for a sentence reduction about two years ago.[5]  (ECF No. 804.)  In doing so, the Court relied on the facts that Bernhardt

- was "66 years old and suffers from diabetes, chronic obstructive pulmonary disease, hyperlipidemia, and hypertension";
- "has continued to be an exemplary inmate" with "no disciplinary infractions";
- had "served almost 26 and one-half of his life sentence," which is longer than the sentences served by some of his less culpable co-defendants;
- "states that he has overcome addiction";

---

[5] The Court is perplexed by the Government's seemingly inconsistent positions in this case and Bernhardt's case, wherein the Government *supported* his motion for compassionate release. (*See* ECF No. 803.)  As discussed below, Eads and Bernhardt are similarly-situated defendants in largely all relevant respects, and in its Order granting Bernhardt's early release, the Court explicitly relied on the fact that Bernhardt "would not be subject to such a long term of imprisonment because of an intervening change in law," over no apparent objection from the Government.  (ECF No. 804 at 4–5) (citation omitted).  This troubling disconnect is further deepened by the fact that the grounds for Eads's Motion, and thus the bases for this Order, are additionally buttressed by the November 2023 amendment to § 1B1.13, arguments not available in 2022 to Bernhardt.

- engaged in volunteer work while in prison and took numerous courses in prison, which he planned to utilize in his future employment; and
- "states that he has a strong community support network ready to welcome him home, including his wife, daughter, son-in-law, and grandson."

(*Id.* at 4–7.)

Most of these same circumstances are now present here for Eads. Thus, granting Eads's Motion is *necessary* to avoid unwarranted sentence disparities among defendants with similar records who were found guilty of similar conduct. See § 3553(a)(6).

In the end, the Court concluded two years ago that Bernhardt "has paid his debt to society, and the time has come to allow him to live a free man." (*Id.* at 8.) Simply put, after more than 28 years in custody, the same is now true for Eads. In light of an intervening change in the controlling law and various factual circumstances—including (1) the addition of section 1B1.13(b)(6); (2) the fact that Eads has now served approximately half the sentence he would have likely been sentenced to today; and (3) the fact that similarly-situated co-defendant Bernhardt was released two years ago—the Court finds that reconsideration on the merits of its earlier Order denying compassionate release is both warranted and justified. See *Servants of Paraclete*, 204 F.3d at 1012.

## IV. CONCLUSION

For the foregoing reasons, the Court ORDERS:

1. Eads's Motion (ECF No. 810) is GRANTED, and his sentence is REDUCED TO TIME SERVED;

2. This Order is STAYED for up to 14 days for the verification of Eads's residence and/or the establishment of a release plan, to make appropriate travel arrangements, and to ensure his safe release;

3. Eads SHALL BE RELEASED as soon as a residence is verified, a release plan is established, and appropriate travel arrangements are made;

4. If more than 14 days are needed to make appropriate travel arrangements and ensure Eads's safe release, the parties shall immediately notify the Court and show cause why the stay should be extended;

5. Eads's previously-imposed conditions of supervised release remain unchanged, subject to any necessary modifications necessitated by his current circumstances; and

6. Government counsel is DIRECTED to forthwith coordinate with the Defendant, the Probation Office, and the Bureau of Prisons, to facilitate full and timely compliance with this Order.

Dated this 16th day of September, 2024.

BY THE COURT:

_____
William J. Martínez
Senior United States District Judge